SOUTHWEST LEGAL GROUP
MICHAEL R. DUFOUR (290981)
8675 Falmouth Avenue, 307
Playa Del Rey, CA 90293
Tel: (818) 591-4300
Fax: (818) 591-4315
mdufour@swlegalgrp.com

HUGHES ELLZEY, LLP
W. Craft Hughes
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Tel: (888) 350-3931
Fax: (888) 995-3335
craft@hughesellzey.com

BOSS LAW
Christopher W. Boss
9887 4th Street North, Suite 202
St. Petersburg, FL 33702
Tel: (727) 471-0039
Fax: (727) 471-1206
cpservice@bosslegal.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSE MARY RAWLS, JOHN M. RAWLS, and CARMELA FOURNIER, on behalf of themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A. <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

ROSE MARY RAWLS, JOHN M. RAWLS, and CARMELA FOURNIER ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint for damages against defendant WELLS FARGO BANK, N.A. ("Defendant" or "Wells Fargo"), based on personal knowledge and on information and belief, alleging as follows:

## INTRODUCTION

1. This is a class action brought pursuant to Fed. R. Civ. P. 23 arising out of Wells Fargo's unlawful debt collection practices. Defendant Wells Fargo collected or attempted collection on residential loans previously extinguished by Wells Fargo and to which Plaintiffs and other members of the putative class ("Class") had no legal obligation to pay.

2. Wells Fargo took actions for its own benefit to affirmatively release its security interest in loans held by Plaintiffs and the Class. By releasing its security interest, Wells Fargo had no legal right to enforce the loans or collect on them. Nonetheless, Wells Fargo illegally collected or attempted to collect on the loans by systematically misrepresenting the status of the loans, obligations under the loans, and initiated debt collection procedures to pressure Plaintiffs and other Class members to pay on the unenforceable loans.

3. Defendant's conduct violates California's Unfair Competition Law, Business & Professions Code § 17200, *et seq*. (the "UCL"), the Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act"), Civil Code § 1788, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Plaintiffs, on behalf of themselves and other similarly situated, seek actual and punitive damages, civil penalties, restitution, declaratory relief to define the parties' rights and obligations, and injunctive relief to prevent Wells Fargo from collecting on the released loans and misrepresenting the obligations of the parties and status of the loans.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). There are one-hundred or more Class members, the matter in controversy, exclusive of fees and costs, exceeds the sum or value of $5,000,000, and at least one member of the Class is a citizen of a State diverse from Wells Fargo.

CLASS ACTION COMPLAINT

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Wells Fargo:

    a. is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    b. does substantial business in this district;

    c. caused a substantial part of the harm within this district; and

    d. is subject to personal jurisdiction in this district.

## PARTIES

6. Plaintiffs Rose Mary Rawls and John M. Rawls (the "Rawls") are natural persons who reside in the City of New Port Richey, County of Pasco, Florida. At all times relevant herein, Mr. and Mrs. Rawls owned and occupied entirely the single-family residence located in St. Petersburg, Florida 33710 ("Rawls Property").

7. Plaintiff Carmela Fournier ("Fournier") is a natural person who reside in the City of White Plains, County of Westchester, New York. At all times relevant herein, Mrs. Fournier owned and occupied entirely the single-family residence located in Saint Petersburg, Florida 33712 ("Fournier Property").

8. Defendant Wells Fargo is a Delaware corporation with its principal place of business in San Francisco, California.

9. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## FACTUAL ALLEGATIONS

### CALIFORNIA LAW RESTRICTS CREDITORS' RIGHTS CONCERNING PARTICULAR MORTGAGE LOANS

10. Under California Code of Civil Procedure ("CCP") § 726(a), also known as the "single action rule," a creditor is only permitted one form of action for

3
CLASS ACTION COMPLAINT

the recovery of any debt secured by a mortgage or deed of trust on real property. This single action must be a foreclosure sale of the underlying property.

11. CCP § 726(a) prohibits a lender from first pursuing a borrower directly for payment of a delinquent loan secured by a mortgage. Rather, the lender must first pursue the real property through judicial foreclosure. This is called the "security first rule."

12. CCP § 726(a) is intended to protect the borrower from a multiplicity of suits. Accordingly, a creditor cannot avoid the requirement to first pursue the real property underlying the loan by waiving its security in that property. The objective of Section 726(a) is to force the creditor to pursue the property as the primary source for payment before looking to the creditor's other assets. If the foreclosure sale does not satisfy all debts secured by the property, then the creditor can obtain a deficiency judgment for the remaining debt, unless there has been a waiver of the deficiency.

13. However, if the residential property underlying a mortgage loan is owner-occupied, CCP § 580b further restricts a creditor's ability to collect on the debt and prohibits the creditor from obtaining any sum of money that is more than what can be recovered in a foreclosure of the underlying property.

14. Specifically, Section 580b, known as the "anti-deficiency statute" provides:

> (a) …[N]o deficiency judgment shall be owed or collected and no deficiency judgment shall lie, for any of the following: (1) After a sale of real property or an estate or years therein for failure of the purchaser to complete his or her contract of sale. (2) Under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate or years therein. (3) Under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan that was used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser. For purposes of subdivision (b), a loan described in this paragraph is a "purchase money loan."
>
> (b) No deficiency judgment shall be owed or collected, and no deficiency judgment shall lien, on a loan, refinance, or other credit transaction that is used to refinance a purchase money loan, or subsequent refinances of a purchase money loan . . . .

15. If a homeowner defaults on a mortgage loan or mortgage loans secured by the home in which he or she lives, the homeowner's repayment liability is limited to the actual sale amount the underlying property can yield in a foreclosure sale. If a foreclosure sale yields less than the value of the defaulted loan or loans, the creditor cannot seek to recover the shortfall.

16. This is true even if the homeowner took out multiple loans for the purchase of the home. If the homeowner defaults on all loans that are secured by the home and a foreclosure sale yields enough money only to pay the first loan (or only part of the first loan), the creditors holding the remaining loans cannot seek to recover any deficiency against the homeowner.

17. The California Legislature enacted CCP § 580b to, among other things: (1) prevent the over-evaluation of land; (2) encourage home ownership; and (3) prevent a downturn in the economy that would likely occur if purchasers of land were burdened with personal liability in the event of falling home values.

18. Although borrowers are no longer liable for debts covered by CCP § 580b, when the deficiency was waived, banks like Wells Fargo developed a practice whereby they, and debt collection agencies to whom secondary loans were sold, would attempt to collect from borrowers and report the debt negatively to credit reporting agencies in an attempt to force the borrowers to pay. Banks contended that although the debt could not be enforced because it was protected by CCP § 580b, the debt was still owed and thus, the banks could collect on it. Borrowers who were unaware of the protections afforded by CCP § 580b and afraid of negative credit reports would pay on the debt.

19. However, effective January 1, 2014, in an effort to end this misleading practice directly contrary to the purpose of CCP § 580b, the California Legislature amended CCP § 580b to explicitly prohibit the collection of any deficiency and any negative credit reporting related to an extinguished debt. Thus, if a secondary loan on an owner-occupied home is not satisfied through a foreclosure sale, the debt is no

longer owed and the creditor is prohibited from collecting on the debt, including reporting that debt to credit reporting agencies.

### DEFENDANTS' SCHEME TO END-RUN CALIFORNIA LAWS PROTECTING HOMEOWNERS

20. During the economic downturn, the values of many of the properties securing underlying loans owned by Wells Fargo decreased significantly such that the value of the property underlying each of the loans was less than the total value of the loans secured by the property.

21. For any of Wells Fargo's loans secured by the properties, pursuant to Sections 726(a) and 580b, Wells Fargo would never be able to recover if the borrower defaulted and the deficiency was waived. Section 726(a) would require Wells Fargo to recover only in a foreclosure sale of the underlying properties, and Section 580b would prevent Wells Fargo from obtaining any more money than what could be obtained in a foreclosure sale when the deficiency was waived.

22. By waiving the deficiency on the loans, Wells Fargo released any ability to legally enforce the debt in any action. Therefore, the debts are not legally enforceable.

23. However, Wells Fargo continues to inform borrowers, including Plaintiff and members of the Class that despite Wells Fargo waiving the deficiencies, the borrowers are "to continue making [his or her] monthly payments." The form letter sent by Wells Fargo to borrowers also references a "loan number," calls Plaintiff the "borrower," and provides "information about the loan referenced above." Through this representation, which is included in letters sent to Plaintiffs and the Class, Wells Fargo misrepresents that the debt is still owed. The Wells Fargo letters received by Plaintiffs are attached as Exhibit 1 (Rawls) and Exhibit 2 (Fournier).

**ROSE MARY RAWLS & JOHN M. RAWLS**

24. On or about February 4, 2005, Mrs. and Mr. Rawls ("Rawls") purchased their home with a loan.[1] The Rawls obtained a loan secured by a Mortgage in an amount of approximately $178,000.00 ("Mortgage"). The Mortgage was used for purchase of the Rawls Property, which as Mrs. and Mr. Rawls' primary residence was then owner-occupied. Thus, the loan was considered to be purchase money and therefore protected by CCP § 580b.

25. The Mortgage is a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

26. Sometime thereafter, as a result of the severe economic turmoil plaguing the United States beginning in 2009, the Rawls Property dramatically decreased in value, resulting in the value of the entire home being less than the amount owed on Mrs. and Mr. Rawls' Mortgage. As a result of the same economic downtown, Mrs. and Mr. Rawls fell behind on payments owed on the Mortgage.

27. In June 2012, Wells Fargo approved a short sale of the Rawls' Property and on July 12, 2012 Mrs. and Mr. Rawls sold the property *via* a short sale. As a result, Wells Fargo sent a letter to the Rawls confirming their "shortfall amount, estimated $54,400.57 is forgiven." *See* <u>Exhibit 3</u> (Wells Fargo's Satisfaction/Release of Mortgage letter to the Rawls). A few months later on September 28, 2012, Wells Fargo signed and filed a SATISFACTION/RELEASE OF MORTGAGE with the Pinellas County Clerk in Florida, declaring the deficiency of the Rawls' Mortgage "secured, fully paid and satisfied." *See* <u>Exhibit 4</u> (Satisfaction/Release of Mortgage for the Rawls).

---

[1] The Rawls actually had two mortgages originated by Wachovia, which were both eventually satisfied by virtue of the short sale. The first mortgage of $178,000 was in 2005 and paid off in full (released August 10, 2012). The second was a home-equity line of credit in 2008 for $77,700 (satisfied October 23, 2012). Both transactions are referred to as the "Mortgage" in this complaint.

28. In early October 2017, Mrs. and Mr. Rawls received an unsolicited letter from Wells Fargo dated October 19, 2017. In the letter, Wells Fargo referenced the "loan number" associated with the Mortgage and stated the borrowers are "to continue making [his or her] monthly payments." The Wells Fargo letter also calls Mrs. and Mr. Rawls the "borrower," and provides "information about the loan referenced above." *See* Exhibit 1 (Wells Fargo Letter re Disaster Relief).

29. The deficiency of Rawls' Mortgage was waived. *See* Exhibits 3-4. As such, Mrs. and Mr. Rawls were protected from any deficiency liability (and collection efforts) by virtue of CCP § 580b. Moreover, because Wells Fargo voluntarily released the Mortgage, Wells Fargo waived its right to collect directly from Mrs. and Mr. Rawls on the Mortgage obligation pursuant to CCP § 726(a).

30. Nonetheless, Wells Fargo misrepresented to the Rawls that they were still obligated under the Mortgage and initiated misleading collection efforts in an attempt to force Mrs. and Mr. Rawls to remit monies towards the debt associated with the Mortgage even though there was no debt owed.

### CARMELA FOURNIER

31. On or about December 19, 2005, plaintiff Carmela Fournier ("Fournier") purchased her home with a loan. Fournier obtained a loan secured by a Mortgage in an amount of approximately $225,600.00 ("Fournier Mortgage").[2] *See* Exhibit 5 (Fournier's 2005 Mortgage). The Fournier Mortgage was used for purchase of the Fournier Property, which as Mrs. Fournier's primary residence was then owner-occupied. Thus, the loan was considered to be purchase money and therefore protected by CCP § 580b.

---

[2] Fournier actually had two mortgages, which were both eventually satisfied by virtue of the short sale. The first mortgage of $225,600 was in 2005, paid off in full, and released on July 22, 2016. *See* Exhibit 6 (Release of 2005 Mortgage for Fournier). The second mortgage was on December 31, 2012 (Exhibit 7), paid off in full, and released on July 25, 2016. *See* Exhibits 8-9 (Release of 2013 Mortgage for Fournier). Both transactions are referred to as the "Fournier Mortgage" in this complaint.

32. The Fournier Mortgage is a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

33. Sometime thereafter, as a result of the severe economic turmoil plaguing the United States beginning in 2009, the Fournier Property dramatically decreased in value, resulting in the value of the entire home being less than the amount owed on the Fournier Mortgage. As a result of the same economic downtown, Mrs. Fournier fell behind on payments owed on the Fournier Mortgage.

34. In February and June 2016, Wells Fargo approved a short sale of the Fournier Property and on June 27, 2016 Fournier sold the property *via* a short sale. As a result, Wells Fargo sent a letter dated July 18, 2016 declaring the deficiency of the Fournier Mortgage "secured, fully paid and satisfied." *See* Exhibit 9 (Wells Fargo's Satisfaction/Release of Fournier Mortgage).

35. In early October 2017, Fournier received an unsolicited letter from Wells Fargo dated October 20, 2017. In the letter, Wells Fargo referenced Fournier's "loan number" associated with the Fournier Mortgage and stated the borrowers are "to continue making [his or her] monthly payments." The Wells Fargo letter also calls Fournier the "borrower," and provides "information about the loan referenced above." *See* Exhibit 2 (Wells Fargo collection letter dated October 20, 2017).

36. The deficiency of the Fournier Mortgage was waived by Wells Fargo. *See* Exhibits 6, 8-9. As such, Fournier was protected from any deficiency liability (and collection efforts) by virtue of CCP § 580b. Moreover, because Wells Fargo voluntarily released the Fournier Mortgage, Wells Fargo waived its right to collect directly from Fournier on the Mortgage obligation pursuant to CCP § 726(a).

37. Nonetheless, Wells Fargo misrepresented to Fournier that she was still obligated under the Fournier Mortgage and initiated misleading collection efforts in an attempt to force Mrs. Fournier to remit monies towards the debt associated with the Fournier Mortgage even though there was no debt owed.

# CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this lawsuit on behalf of themselves and the proposed Class members under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons who obtained a residential purchase or refinance loan with Wells Fargo secured by real property located in the United States, where Wells Fargo waived the deficiency of the loan on the secured property, and Wells Fargo subsequently attempted to collect or actually collected allegedly unpaid balances on the loans after the deficiencies were waived within the last four years.

39. Excluded from the Class is Defendant and any of its officers, directors, and employees.

## NUMEROSITY

40. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and thereon alleges, that the proposed Class contains thousands of members. Wells Fargo can determine the precise number of Class members through its currently available business records.

## PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on standard form contracts. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant has a policy of collecting deficiency balances that are not owed by Plaintiffs or the Class;
   b. Whether Defendant's representations were likely to mislead a reasonable consumer;
   c. Whether Defendant's alleged conduct constitutes violations of California Civil Code § 1788, *et seq.*;

    d. Whether the alleged conduct constitutes violations of California Business & Professions Code § 17200, *et seq.*;

    e. Whether the alleged conduct constitutes violations of CCP § 726(a);

    f. Whether Plaintiffs and the Class have sustained monetary or property loss and the proper measure of that loss;

    g. Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief; and

    h. Whether Plaintiffs are entitled to restitution.

### TYPICALITY

42. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs are members of the Class they seek to represent.

### ADEQUACY

43. Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs have retained counsel experienced in the prosecution of this type of class action litigation. Plaintiffs have no adverse or antagonistic interests to those in the Class.

### SUPERIORITY

44. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. Further, the adjudication of this action presents no unusual management difficulties.

45. Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiffs and the proposed Class. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class will continue to be misled and denied their rights. Defendant has acted or refused to act on grounds that apply to the Class so that injunctive and declaratory relief is appropriate to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### CAL. CIV. CODE § 1788, *ET SEQ.*

46. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

47. Defendant is a "debt collector" within the meaning of California Civil Code § 1788.2(c) because it regularly engages in debt collection. The monies allegedly owed by Plaintiffs and members of the Class are "debts" within the meaning of California Civil Code § 1788.2(d).

48. California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") incorporates by reference and requires compliance with the provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* Cal. Civil Code § 1788.17.

49. As described above, Defendant has violated these laws by: (a) making false representations concerning the character, amount, or legal status of any debt in asserting an alleged debt owed by Plaintiffs and the Class members, 15 U.S.C. § 1692e(2); (b) making false representations or using deceptive means to collect or attempt to collect on any debt, 15 U.S.C. § 1692e(10); and (c) using unfair or unconscionable means to collect or attempt to collect any debt, including collecting amounts which were not expressly authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f(1).

50. Pursuant to California Code § 1788.30 and 1788.17, Plaintiffs and the members of the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the Rosenthal Act. Such damages include, without limitation, monetary losses and damages, which damages are in an amount to be proven at trial. In addition, pursuant to California Civil Code § 1788.30 and 1788.17, because Defendant's violations of the Rosenthal Act were committed knowingly and willingly, Plaintiffs and the Class are entitled to recover penalties of at least $1,000 per violation as provided for in the Rosenthal Act.

51. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to California Civil Code § 1780.30.

## COUNT II

**UNLAWFUL BUSINESS ACTS AND PRACTICES**

**VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200**

52. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

53. For the reasons discussed above, Defendant violated (and on information and belief, continues to violate) the UCL by engaging in the above-described and prohibited unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices as part of its collection and attempted collection of mortgage debts that were/are not owed.

54. As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of Defendant's conduct.

55. The unsecured debts at issue were no longer owed by Plaintiffs and Class members and Defendant was expressly prohibited from collecting on them. Nonetheless, Defendant misrepresented the status of the loans and Plaintiffs and Class members' obligations to pay, and attempted to collect on the loans.

56. Defendant's above-described wrongful acts and practices also constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

57. California Business & Professions Code § 17200 prohibits any "unlawful … business act or practice." Defendant's above-described wrongful acts and practices constitute "unlawful" business acts and practices by, *inter alia*, systematically and continuously attempting to collect upon alleged debts neither owed by Plaintiffs nor the Class members and misrepresenting the status of these debts and obligations due under them, and violating California Civil Code §§ 580b, 726(a), 1572, 1709, 1710, 1711, and 1788.17; and 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1).

58. California Business & Professions Code § 17200 prohibits any "unfair … business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

59. Plaintiffs reserve the right to allege further conduct which constitutes other unlawful or unfair business acts or practices. Such conduct is ongoing and continues to this date.

60. Defendant's above-described wrongful acts and practices also constitute "fraudulent" business acts and practices in that the representations and omissions described herein are false, misleading and/or likely to deceive reasonable consumers into believing they had to pay on a debt that was no longer owed.

61. On information and belief, Defendant's above-described unlawful, fraudulent, and unfair business acts and practices continue to this day and are

ongoing. As a direct and/or proximate result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiffs and Class members have suffered injury in fact and lost money in connection with the payment of money on loans for which they are entitled to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

62. Additionally, pursuant to Business & Professions Code § 17203, Plaintiffs seek an order and injunction requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices.

## COUNT III

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *ET SEQ.*

63. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

64. Defendant violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, which prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

65. Defendant violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the character, amount or legal status of deficiency balances that are not in fact legally owed by Plaintiffs and the Class.

66. Defendant violated 15 U.S.C. § 1692e(10) by using false representations or deceptive means to collect or attempt to collect from Plaintiffs and the Class debts purportedly owed under the mortgage agreements.

67. Defendant violated 15 U.S.C. § 1692f's prohibition of using unfair or unconscionable means to collect or attempt to collect any debt by collecting monies from Plaintiffs and the Class that were not expressly authorized by the mortgage agreement or permitted by law. *See* 15 U.S.C. § 1692f(1).

68. As a result of Defendant's violations of 15 U.S.C. § 1692, *et seq.*, Plaintiffs are entitled pursuant to 15 U.S.C. § 1692k to actual damages, statutory damages, and the costs of the action, together with attorney's fees.

## COUNT IV

### DECLARATORY RELIEF

69. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

70. A controversy has arisen and now exists between Plaintiffs and Class members on the one hand and Defendant on the other. The controversy between the parties concerns the ability of Defendant to collect on the debts at issue. Plaintiffs and the Class contend that pursuant to CCP § 580b and 726(a), the debts are not collectable. Defendant disputes this contention and contends that the debts are owed and thus, collectable.

71. Plaintiffs request a judicial determination of their rights and duties, and the rights and duties of absent Class members and a declaration as to the collectability of the debts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Certifying the Class as requested herein;

2. Awarding Plaintiffs and the proposed Class members actual and punitive damages;

3. Awarding civil penalties;

4. Awarding restitution to Plaintiffs and the proposed members of the Class;

5. Awarding declaratory and injunctive relief, enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

1  6. Awarding attorneys' fees and costs; and

2  7. Providing such further relief as may be just a proper.

### JURY DEMAND

Pursuant to the Seventh Amendment of the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: February 26, 2018

SOUTHWEST LEGAL GROUP
MICHAEL R. DUFOUR (290981)

*/s/ Michael R. Dufour*
MICHAEL R. DUFOUR

8675 Falmouth Avenue, 307
Playa Del Rey, CA 90293
Tel: (818) 591-4300
Fax: (818) 591-4315
mdufour@swlegalgrp.com

HUGHES ELLZEY, LLP
W. CRAFT HUGHES
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Tel: (888) 350-3931
Fax: (888) 995-3335
craft@hughesellzey.com

BOSS LAW
CHRISTOPHER W. BOSS
9887 4th Street North, Suite 202
St. Petersburg, FL 33702
Tel: (727) 471-0039
Fax: (727) 471-1206
cpservice@bosslegal.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT